Arrest on Out-of-District Offense

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

FILED
APR 12 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

**ARREST ON OUT-OF-DISTRICT OFFENSE**

CASE UNSEALED PER ORDER OF COURT

Case Number: **19MJ1502**

The person charged as Akrum Alrahib now appears before this United States District Court for an initial appearance as a result of the following charges having been filed in the United States District Court for the Southern District of Florida with conspiracy, in violation of Title 18, USC, Section 371; conspiracy, in violation of Title 18, USC, Section 1349; wire fraud, in violation of Title 18, USC, Section 1343; and excise tax evasion, in violation of Title 26, USC, Section 5762(a)(3).

The charging documents and the warrant of the arrest of the defendant which was issued by the above United States District Court are attached hereto.

I hereby swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: April, 12, 2019

Special Agent David Chell
Internal Revenue Service-Criminal Investigation

Reviewed and Approved:
Dated: 4/12/2019

Assistant United States Attorney

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| Akrum Alrahib, | ) Case No. |
| | ) |
| | ) **19-20165-CR-MORENO/LOUIS** |
| Defendant | ) |

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   Akrum Alrahib                                             ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint
☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy, in violation of Title 18, United States Code, Section 371; Conspiracy, in violation of Title 18, United States Code, Section 1349; wire fraud, in violation of Title 18, United States Code, Section 1343; excise tax evasion, in violation of Title 26, United States Code, Section 5762(a)(3).

Date: 3/29/19

*Certified to be a true and correct copy of the document on file
Angela E. Noble, Clerk,
U.S. District Court
Southern District of Florida
By Yesenia Rodriguez, Deputy Clerk
Date Mar 29, 2019*

*Issuing officer's signature*

City and state:   Miami, Florida

Angela E. Noble, Clerk of Court
*Printed name and title*

---

**Return**

This warrant was received on *(date)* 4/1/19, and the person was arrested on *(date)* 4/11/19
at *(city and state)*

Date: 4/12/19

*Arresting officer's signature*

David Choll, Special Agent
*Printed name and title*



FILED BY ___ D.C.
MAR 28 2019
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **19-20165-CR-MORENO/LOUIS**

18 U.S.C. § 371
18 U.S.C. § 1349
18 U.S.C. § 1343
26 U.S.C. § 5762(a)(3)
18 U.S.C. § 981(a)(1)(C)
26 U.S.C. § 5763(d)

**UNITED STATES OF AMERICA**

vs.

**AKRUM ALRAHIB,**

　　**Defendant.**
_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

#### Federal Tobacco Excise Tax

1.　The Alcohol and Tobacco Tax and Trade Bureau ("TTB") administered and enforced Federal statutes and TTB regulations pertaining to, in part, tobacco products imported into the United States from a foreign country.

2.　Tobacco products included "cigars," which were defined as "any roll of tobacco wrapped in leaf tobacco or in any substance containing tobacco." 26 U.S.C. § 5702(a) and (c). "Large cigars" were cigars weighing more than three pounds per one thousand cigars. 26 U.S.C. § 5701(a)(2).

3. A person or entity who imported tobacco products into the United States was required to pay excise tax ("Federal Tobacco Excise Tax") to the United States government. 26 U.S.C. § 5703(a)(1).

4. Federal Tobacco Excise Tax on imported large cigars was determined at the time the cigars were removed by the importer, or its designee, from the custody of United States Customs and Border Protection ("CBP") and entered domestic commerce. 26 U.S.C. § 5703(b)(1).

5. The importer, or its designee, was required to pay Federal Tobacco Excise Tax directly to CBP on or about the date on which the large cigars were released from CBP's custody. 27 C.F.R. § 41.41.

6. Tobacco importers often designated customs brokers to facilitate the importation of tobacco products into the United States. A customs broker was a person who was licensed to transact customs business, including, in part, the payment of duties, taxes, or other charges assessed or collected by CBP on merchandise by reason of its importation, on behalf of others. 19 C.F.R § 111.1.

7. Federal Tobacco Excise Tax properly due and owing on imported large cigars was calculated based on a statutorily mandated percentage of the price for which the cigars were to be sold by the importer (the "first sale price"). 26 U.S.C. § 5701(a)(2); 27 C.F.R. § 41.39.

8. The Federal Tobacco Excise Tax rate for large cigars was 52.75 percent of the first sale price, but not more than 40.26 cents per cigar. 26 U.S.C. § 5701(a)(2).

9. Importers typically charged their customers (a) the price of the tobacco products; (b) any markup charged by the importer; and (c) the importer's costs and fees, including the amount of Federal Tobacco Excise paid by the importer.

10. Proper and truthful recordkeeping and documentation as mandated by Federal law and regulations was essential to enable CBP to perform its function with respect to collecting Federal Tobacco Excise Tax properly due and owing.

### Trendsettah USA, Inc.

11. Trendsettah USA, Inc. ("TRENDSETTAH") was a California corporation authorized to transact business in Florida.

12. Defendant **AKRUM ALRAHIB** was a resident of the State of California. **ALRAHIB** was the President of TRENDSETTAH and several related entities, which conducted business in Florida, California, the Dominican Republic, and elsewhere.

13. TRENDSETTAH sold various tobacco products and marijuana paraphernalia, including large cigars and "blunt wraps," which were imported from the Dominican Republic.

14. TRENDSETTAH opened and maintained bank accounts at U.S. Bank and J.P. Morgan Chase in the State of California.

### Havana 59' Cigar Company

15. Havana 59' Cigar Company ("HAVANA 59") was a Florida corporation incorporated on or about June 10, 2005.

16. Gitano Pierre Bryant, Jr., a/k/a "Tony Bryant," was President of HAVANA 59.

17. In or around September 2008, TTB issued a Tobacco Importer Permit to HAVANA 59.

18. According to the Tobacco Importer Permit application submitted to TTB, Gitano Pierre Bryant, Jr., owned 100 percent of the shares of HAVANA 59.

3

19. Beginning in or around April 2013, Gitano Pierre Bryant, Jr., began importing tobacco products, including large cigars, on behalf of **AKRUM ALRAHIB** and TRENDSETTAH.

20. HAVANA 59 opened and maintained bank accounts at SunTrust Bank in the State of Florida.

## COUNT 1
## Conspiracy
## (18 U.S.C. § 371)

1. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2. From in or around April 2013, through in or around December 2014, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### AKRUM ALRAHIB,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly, combine, conspire, confederate, and agree with Gitano Pierre Bryant, Jr., and other persons known and unknown to the Grand Jury:

(a) to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of Customs and Border Protection, an agency of the United States Department of Homeland Security, in its assessment and collection of Federal Tobacco Excise Tax, and to commit certain offenses against the United States, that is:

(b) to violate Title 26, United States Code, Section 5762(a)(3), by knowingly and willfully attempting to evade and defeat the excise tax properly due and owing on imported large cigars.

## PURPOSE OF THE CONSPIRACY

3. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by defrauding the United States and avoiding their lawful obligation to pay Federal Tobacco Excise Tax properly due and owing on large cigars imported into South Florida by making materially false and fraudulent representations, and by the concealment of material facts, concerning, among other things, the price the defendant paid for large cigars.

## MANNER AND MEANS

The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

4. In or around April 2013, **AKRUM ALRAHIB** partnered with Gitano Pierre Bryant, Jr., a TTB-permitted tobacco importer, to import large cigars from the Dominican Republic into Miami, Florida. Bryant agreed to import the cigars through Bryant's South Florida company, HAVANA 59.

5. In order to lower their costs, **AKRUM ALRAHIB** and Gitano Pierre Bryant, Jr., agreed that Bryant would underreport the Federal Tobacco Excise Tax due and owing on imported large cigars by concealing the actual first sale price, that is, the price **ALRAHIB** actually paid for the cigars.

6. In order to hide the actual first sale price, Gitano Pierre Bryant, Jr., and **AKRUM ALRAHIB** created and caused to be created false invoices. The false invoices made it appear that **ALRAHIB** was purchasing cigars from Bryant at a price between approximately $0.021 and $0.025 per cigar—the first sale price on which basis the Federal Tobacco Excise Tax would be calculated.

7. To facilitate the importation of large cigars, Gitano Pierre Bryant, Jr., contracted with a licensed customs broker to oversee the entry into the United States of large cigars imported by HAVANA 59. The licensed customs broker calculated and paid the Federal Tobacco Excise Tax due and owing on imported large cigars based on information supplied by Gitano Pierre Bryant, Jr.

8. Gitano Pierre Bryant, Jr., provided to the licensed customs broker the falsified invoices knowing that the false first sale prices thereon would be used by the licensed customs broker to calculate and report to CBP the Federal Tobacco Excise Tax due and owing on the imported cigars. In this manner, Gitano Pierre Bryant, Jr., consistently evaded the Federal Tobacco Excise Tax properly due and owing on large cigars that Bryant imported into the United States on behalf of **AKRUM ALRAHIB**.

9. In reality, **AKRUM ALRAHIB** did not purchase large cigars from Gitano Pierre Bryant, Jr., as reflected on the false invoices. Instead, **ALRAHIB** purchased the large cigars directly from the Dominican Republic-based manufacturer, at a price of between approximately $0.04 and $0.07 per cigar. **ALRAHIB** paid for the large cigars through bank wires and money orders, which **ALRAHIB** sent and caused to be sent to the Dominican Republic-based manufacturer. In total, **ALRAHIB** caused approximately $9,914,921 to be sent to the Dominican Republic-based manufacturer.

10. By secretly purchasing the cigars directly from the Dominican Republic-based manufacturer, **AKRUM ALRAHIB** ensured that the actual first sale price he paid for the cigars imported from the Dominican Republic was concealed from CBP.

11. The concealment of the actual first sale price paid by **AKRUM ALRAHIB** significantly reduced the amount of Federal Tobacco Excise Tax paid by Gitano Pierre Bryant, Jr., who, as the importer, was responsible for paying Federal Tobacco Excise Tax.

12. In exchange for **AKRUM ALRAHIB's** participation in the evasion scheme, Gitano Pierre Bryant, Jr., agreed to pay or "kick back" to **ALRAHIB** a portion of the money Bryant saved by evading Federal Tobacco Excise Tax.

13. Gitano Pierre Bryant, Jr., paid such kickbacks to **AKRUM ALRAHIB** by (a) purchasing and sending cigar-making machinery to **ALRAHIB**, and (b) paying **ALRAHIB's** Miami-based employees. The approximate dollar-value of these kickbacks was $701,669.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, the defendant and his co-conspirators committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1. On or about March 13, 2014, Gitano Pierre Bryant, Jr., presented a false invoice to a licensed customs broker, which invoice underreported the first sale price paid by **AKRUM ALRAHIB** for a shipment of large cigars assigned CBP Entry Number BVX03060472.

2. On or about March 13, 2014, **AKRUM ALRAHIB** caused a payment of $200,000 to be wire transferred to a cigar manufacturer located in the Dominican Republic.

3. On or about March 13, 2014, Gitano Pierre Bryant, Jr., presented a false invoice to a licensed customs broker, which invoice underreported the first sale price paid by **AKRUM ALRAHIB** for a shipment of large cigars assigned CBP Entry Number BVX03060464.

4. On or about March 14, 2014, **AKRUM ALRAHIB** caused a payment of $200,000 to be wire transferred to a cigar manufacturer located in the Dominican Republic.

5. On or about March 14, 2014, Gitano Pierre Bryant, Jr., imported into the United States a shipment of large cigars assigned CBP Entry Number BVX03060472.

6. On or about March 14, 2014, Gitano Pierre Bryant, Jr., imported into the United States a shipment of large cigars assigned CBP Entry Number BVX03060464.

7. On or about March 20, 2014, **AKRUM ALRAHIB** caused a payment of $200,000 to be wire transferred to a cigar manufacturer located in the Dominican Republic.

8. On or about March 20, 2014, Gitano Pierre Bryant, Jr., presented a false invoice to a licensed customs broker, which invoice underreported the first sale price paid by **AKRUM ALRAHIB** for a shipment of large cigars assigned CBP Entry Number BVX03060795.

9. On or about March 21, 2014, Gitano Pierre Bryant, Jr., imported into the United States a shipment of large cigars assigned CBP Entry Number BVX03060795.

10. On or about March 26, 2014, Gitano Pierre Bryant, Jr., presented a false invoice to a licensed customs broker, which invoice underreported the first sale price paid by **AKRUM ALRAHIB** for a shipment of large cigars assigned CBP Entry Number BVX03061041.

11. On or about March 28, 2014, Gitano Pierre Bryant, Jr., imported into the United States a shipment of large cigars assigned CBP Entry Number BVX03061041.

12. On or about March 31, 2014, **AKRUM ALRAHIB** caused a payment of $100,000 to be wire transferred to a cigar manufacturer located in the Dominican Republic.

13. On or about April 4, 2014, Gitano Pierre Bryant, Jr., presented a false invoice to a licensed customs broker, which invoice underreported the first sale price paid by **AKRUM ALRAHIB** for a shipment of large cigars assigned CBP Entry Number BVX03061330.

14. On or about April 4, 2014, Gitano Pierre Bryant, Jr., imported into the United States a shipment of large cigars assigned CBP Entry Number BVX03061330

15. On or about April 10, 2014, **AKRUM ALRAHIB** caused a payment of $100,000 to be wire transferred to a cigar manufacturer located in the Dominican Republic.

16. On or about April 10, 2014, Gitano Pierre Bryant, Jr., presented a false invoice to a licensed customs broker, which invoice underreported the first sale price paid by **AKRUM ALRAHIB** for a shipment of large cigars assigned CBP Entry Number BVX03061546.

17. On or about April 14, 2014, Gitano Pierre Bryant, Jr., imported into the United States a shipment of large cigars assigned CBP Entry Number BVX03061546.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
## Conspiracy to Commit Wire Fraud
## (18 U.S.C. § 1349)

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as if fully set forth herein.

2. From in or around April 2013, through in or around December 2014, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**AKRUM ALRAHIB,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with Gitano Pierre Bryant, Jr., and other persons known and unknown to the Grand Jury, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted, by means

of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE CONSPIRACY

3. It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by avoiding their lawful obligation to pay Federal Tobacco Excise Tax properly due and owing on large cigars imported into South Florida by making materially false and fraudulent representations, and by the concealment of material facts, concerning, among other things, the price the defendant paid for large cigars.

### MANNER AND MEANS

4. The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as a description of the manner and means.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 3-4
### Wire Fraud
### (18 U.S.C. § 1343)

1. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2. From in or around April 2013, through in or around December 2014, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### AKRUM ALRAHIB,

did knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money or property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice, did

knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

## PURPOSE OF THE SCHEME AND ARTIFICE

3. It was a purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by avoiding their lawful obligation to pay Federal Tobacco Excise Tax properly due and owing on large cigars imported into South Florida by making materially false and fraudulent representations, and by the concealment of material facts, concerning, among other things, the price the defendant paid for large cigars.

## THE SCHEME AND ARTIFICE

4. The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as a description of the scheme and artifice.

## USE OF THE WIRES

5. On or about the dates listed below for each count, the defendant, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, as more particularly described in each count below:

| COUNT | APPROX. DATE | DESCRIPTION OF WIRE TRANSMISSION |
|---|---|---|
| 3 | 3/31/2014 | Wire transfer of $100,000 from TRENDSETTAH's J.P. Morgan Chase account in California, ending in x-5338, to a TotalBank account in Miami, Florida, ending in x-5306 |
| 4 | 4/10/2014 | Wire transfer of $100,000 from TRENDSETTAH's J.P. Morgan Chase account in California, ending in x-5338, to a TotalBank account in Miami, Florida, ending in x-5306 |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 5-30
## Fraudulent Refusal to Pay or Evasion of Federal Tobacco Excise Tax
## (26 U.S.C. § 5762(a)(3))

1. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2. On or about the dates set forth as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**AKRUM ALRAHIB,**

did willfully, and with intent to defraud the United States, refuse to pay and attempt to evade and defeat the Federal Tobacco Excise Tax properly due and owing on imported large cigars, and the payment thereof, as set forth as to each count below:

| COUNT | APPROX. DATE | CBP ENTRY NUMBER | CLAIMED FIRST SALE PRICE (PER UNIT, IN DOLLARS) | APPROX. TAX EVADED |
|---|---|---|---|---|
| 5 | 4/1/2013 | BVX03048378 | 0.02500 | $33,327.45 |
| 6 | 5/16/2013 | BVX03050184 | 0.02500 | $33,327.45 |
| 7 | 6/3/2013 | BVX03050796 | 0.02500 | $33,327.45 |
| 8 | 7/8/2013 | BVX03051836 | 0.02500 | $33,327.45 |
| 9 | 8/3/2013 | BVX03052859 | 0.02500 | $33,327.45 |
| 10 | 9/6/2013 | BVX03054152 | 0.02500 | $33,327.45 |

| COUNT | APPROX. DATE | CBP ENTRY NUMBER | CLAIMED FIRST SALE PRICE (PER UNIT, IN DOLLARS) | APPROX. TAX EVADED |
|---|---|---|---|---|
| 11 | 10/4/2013 | BVX03055092 | 0.02500 | $33,327.45 |
| 12 | 11/2/2013 | BVX03055910 | 0.02500 | $33,327.45 |
| 13 | 12/10/2013 | BVX03057106 | 0.02161 | $39,759.96 |
| 14 | 1/6/2014 | BVX03058039 | 0.02200 | $35,549.28 |
| 15 | 2/8/2014 | BVX03059060 | 0.02161 | $39,789.50 |
| 16 | 3/4/2014 | BVX03059847 | 0.02161 | $39,789.50 |
| 17 | 3/14/2014 | BVX03060464 | 0.02161 | $35,838.12 |
| 18 | 3/14/2014 | BVX03060472 | 0.02161 | $35,838.12 |
| 19 | 3/21/2014 | BVX03060795 | 0.02161 | $39,789.50 |
| 20 | 3/28/2014 | BVX03061041 | 0.02161 | $39,789.50 |
| 21 | 4/4/2014 | BVX03061330 | 0.02161 | $39,759.96 |
| 22 | 4/14/2014 | BVX03061546 | 0.02161 | $39,789.50 |
| 23 | 5/2/2014 | BVX03062429 | 0.02161 | $39,973.29 |
| 24 | 6/2/2014 | BVX03063450 | 0.02161 | $39,973.29 |
| 25 | 7/7/2014 | BVX03065158 | 0.02161 | $39,973.29 |
| 26 | 8/1/2014 | BVX03066404 | 0.02161 | $39,973.29 |
| 27 | 9/2/2014 | BVX03067394 | 0.02161 | $39,973.29 |
| 28 | 10/3/2014 | BVX03068863 | 0.02161 | $39,973.29 |
| 29 | 11/3/2014 | BVX03070133 | 0.02161 | $39,973.29 |
| 30 | 12/1/2014 | BVX03071446 | 0.02161 | $39,973.29 |

In violation of Title 26, United States Code, Section 5762(a)(3), and Title 18, United States Code, Section 2.

## FORFEITURE
## (18 U.S.C. § 981(a)(1)(C) & 26 U.S.C. § 5763(d))

1. The allegations in this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **AKRUM ALRAHIB**, has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Sections 1343 or 1349, as alleged in this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

3. Upon conviction of a violation of Title 26, United States Code, Section 5762(a)(3), as alleged in this Indictment, the defendant shall forfeit to the United States, pursuant to Title 26, United States Code, Sections 5763(d) and 7302, any property, real or personal, intended for use in violating the provisions of Chapter 52 of the Internal Revenue Code, or regulations thereunder, or which has been so used.

4. The property to be forfeited includes, but is not limited to, a forfeiture money judgment in the amount of at least $9,914,921.

5. If any of the property described above, as a result of any act or omission of the defendant:

    a) cannot be located upon the exercise of due diligence;

    b) has been transferred or sold to, or deposited with, a third party;

    c) has been placed beyond the jurisdiction of the court;

    d) has been substantially diminished in value; or

    e) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United

States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 26, United States Code, Section 5763(d), and the procedures set forth in Title 21, United States Code, Section 853, all of which are made applicable by Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

CHRISTOPHER B. BROWNE
ASSISTANT UNITED STATES ATTORNEY

15

# DEFENDANT LOCATOR FORM

Name of Defendant: AKRUM ALRAHIB  DOB: _____

Date of Arrest: 4/11/19 _____ Time of Arrest: _____

Arresting Agent/Agency: _____
Immigration Status: USC____ MEX____ LPR____ BCC____ OTHER____

## MCC Information

Reservation no.: _____ or Window time: _____

Date of Booking: _____ Booking Number: _____

## Other Booking Facility Information

(GEO, CCA, Juvenile Hall, State or County facility)

Facility: _____ Arrival date: _____ Temporary stay: **Yes** or **No**

## Hospitalized Defendant Information

Name of Medical Center: _____

Date of Hospital Admittance: _____
Time: _____

Reason for Hospitalization: _____

_____

Expected Date of Discharge (Approx. if known): _____

(Revised 01/2012)